## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**DIANNA MARIE KELLEY,**

     **Plaintiff,**

**v.**                                                                 **CASE NO. 2:11-cv-00610**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

     **Defendant.**

### <u>PROPOSED FINDINGS AND RECOMMENDATION</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Dianna Marie Kelley (hereinafter referred to as "Claimant"), filed an application for DIB on May 18, 2009, alleging disability as of October 1, 2007, due to arthritis in neck and back, two bulging discs in back, crippled left hand, cellulitis, tail bone pain, and depression.  (Tr. at 30, 141-45, 148-49, 173-80, 205-12, 242-48, 267-72.)[1]  The claim was denied initially and upon reconsideration.  (Tr. at 73-75, 79-81.)  On December 30, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr.

---

[1]    Claimant filed a previous application for Social Security disability benefits while residing in Michigan wherein she alleged disability due to "cellulitis in feet and legs, depression, and hormone replacement" per a Notice of Disapproved Claim dated September 11, 2006.  (Tr. at 68-72.)

at 85.)  The video hearing was held on June 23, 2010 before the Honorable James P. Toschi. (Tr. at 47-64, 94, 101, 118, 130, 131.)  By decision dated June 30, 2010, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 30-46.)  The ALJ's decision became the final decision of the Commissioner on July 14, 2011, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-5.)  On September 9, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the

claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date, October 1, 2007.  (Tr. at 32)  The ALJ noted that Claimant met the insured status requirements of the Social Security Act through March 31, 2011.  Id.  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of status post fracture of the left hand, status post gastric bypass surgery, degenerative disc disease, and spinal stenosis.  (Tr. at 32-35.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 35–36.)  The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations.  (Tr. at 36-40.)  As a result, Claimant can return to her past relevant work.  (Tr. at 40.)  On this basis, benefits were denied.  (Tr. at 40.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.   <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."   <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 57 years old at the time of the administrative hearing.  (Tr. at 53.)  She has a high school education with no special education.  (Tr. at 50.)  In the past, she worked as a receptionist and clerk operator.  (Tr. at 56.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

Physical Evidence

Records indicate Claimant was treated by Daksha Bakshi, M.D., Henry Ford Health System, on 35 occasions from July 21, 1998 to April 3, 2006.  (Tr. at 316-78.)  Dr. Bakshi treated Claimant for a variety of complaints, including left breast pain, left arm pain, chest pain, left leg pain with hematoma, low back pain, earache, sore throat, headache, dizziness, swollen feet, itching, cellulitis of the left foot, lump on back and neck, vaginal bleeding, pap smear, hormone replacement therapy, and depression.  Id.

On September 6, 2006, Muhammad Mian, M.D., a State agency medical source, provided a Case Analysis report.  Dr. Mian concluded:

> Non severe PI.  54 yr [year] old F [female] with 3 yr h/o [history of] recurrent cellulitis of both legs following a minor injury.  She has been in patient x3 [3 times] since start of problem in 2003 each time requiring few days admission and antibiotics, last admission being 11-05.  CE [consultative examination] reported mild swelling of both legs with no open wounds or sign of infection.  Muscle power and ROM [range of motion] was reported normal.

(Tr. at 300.)

On September 19, 2006, Stephen S. Bai, M.D., Henry Ford Health System, reviewed an MRI of Claimant's lumbar spine with contrast and reported:

> There is mild disc desiccation at L3 through S1.  The conus medullaris terminates at the L1 vertebral body level.  There is mild intervertebral disc height loss at L4-L5.  The intervertebral disc heights, interspacing, and alignment appear otherwise unremarkable.  There is generalized decreased bone marrow signal present.  L1-L2...L2-L3...L3-L4...there is no evidence of disc bulge, central canal stenosis, or neural foraminal compromise.  L4-L5...L5-S1: At this level there is mild circumferential disc bulge present without evidence of central canal stenosis or neural foraminal compromise.
>
> IMPRESSION:
> 1.  Mild discogenic change of the lower lumbar spine.
> 2.  Mild degenerative change of the lower lumbar spine. 3.  Decreased signal of the marrow which may be due to anemia or smoking.

5

(Tr. at 452.)

On September 19, 2006, Gregory D. Olson, M.D., Henry Ford Health System, reviewed Claimant's lumbar spine x-rays and reported:

> IMPRESSION:
> 1. Minimal elements of degenerative facet joint change and potentially minimal elements of degenerative disc change at the L4/L5 and L5/S1 levels. No other discrete lumbar spinal abnormality by plain film exam.

(Tr. at 453.)

On September 20, 2006, Dr. Bakshi stated in a note to Claimant: "This is in regard to your recent back x-ray dated September 19, 2006, which shows evidence of arthritis in your lower back. Please follow back if you are continuing to have problems." (Tr. at 379, 468.)

On September 22, 2006, Dr. Bakshi stated in a note to Claimant:

> This is regarding your recent MRI of your back dated September 19, 2006, which shows evidence of arthritis in your back. Also, there is a mild bulging disc noted at L5-S1 level. If you are continuing to have problems, please follow back in the office. You may need to see either Orthopedic Surgery of [sic, or] Neurosurgery if you are continuing to have significant problems.

(Tr. at 380, 467.)

On March 28, 2007, Lance R. Chaldecott, M.D., Orthopedic Specialists, stated that he examined Claimant at the request of Dr. Bakshi and reviewed her MRIs, which he stated showed:

> [D]ry desiccated disk at L3-L4, L4-L5. There is significant stenosis at L4-L5 with ligamentous and facet hypertrophy...
>
> We have discussed surgical intervention versus nonoperative management. At this point, she would like to keep surgery as a last resort. Would like to begin a formal nonoperative program. Today, she is given a prescription for physical therapy and a prescription for epidural steroid injections. I would

like to have her return for evaluation in three months.

(Tr. at 440-41, 464.)

Records indicate Claimant was given nine lumbar epidural steroid injections from April 23, 2007 through May 15, 2008 at Henry Ford Wyandotte Hospital.  (Tr. at 442-51.)

On September 12, 2007, Sujji Potlapally, M.D., Henry Ford Medical Center, reported that x-rays of Claimant's left ankle showed:

> FINDINGS:
> 1.  Mild soft tissue swelling is seen adjacent to the medial aspect of the foot and distal tibia, and along the dorsum of foot.
> 2.  No acute fracture or dislocation identified.
> 3.  Mild degenerative changes are seen in the tarsal bones particularly dorsally.  There is prominent plantar calcaneal spurring.
>
> Impression: Soft tissue swelling, of uncertain cause and some degenerative changes.

(Tr. at 463.)

On May 19, 2008, Claimant was admitted to Henry Ford Health System for gastric bypass surgery for morbid obesity.  She was discharged on May 21, 2008.  (Tr. at 454-58.)

On November 17, 2008, Claimant presented to the Logan Regional Medical Center after being kicked in the left hand by her horse.  (Tr. at 392-400.)

On November 19, 2008, Robert W. McCleary, M.D., Logan Regional Medical Center, stated:

> This is a 56 year old female who states that she was kicked in her hand by her horse on November 17, 2008...She was placed in a splint...
>
> ASSESSMENT: Left fourth proximal phalanx fracture at the base of left hand.
>
> PLAN: Left hand fourth proximal phalanx closed reduction under anesthesia with percutaneous pinning with ulnar casting...I feel she is stable for surgery.

(Tr. at 381-83.)

On November 20, 2008, Dr. McCleary performed surgery on Claimant's left hand: "OPERATIVE PROCEDURE: Left fourth digit proximal phalanx fracture closed reduction under anesthesia with manipulation with ulnar gutter cast...had near perfect anatomical reduction." (Tr. at 384.)

On June 23, 2009, a State agency medical source provided a Consultative Examination Report. (Tr. at 401-06.) The evaluator, Jules J. Barefoot, M.D., concluded:

> EXTREMITIES: Show a moderate amount of joint hypertrophy present in the MCP, PIP, and DIP joints of both hands, but most prominently involving the left hand at the long, ring, and fifth fingers. She was noted to have marked loss of flexion in her left hand in the long, ring, and little fingers with flexion in her fifth finger noted to be about 10% of normal at the MCP, PIP, and DIP joints and the ring finger is estimated to be about 30% at the PIP and DIP joints and in the ring finger is estimated to be about 25% of normal at the PIP and DIP joints. There is no evidence of and [sic, any] significant edema in the fingers. There is no evidence of any muscle atrophy affecting the hands or forearms
>
> RANGE OF MOTION: Measurements were done. The examinee did have full mobility present in the cervical and lumbar spine, as well as the shoulders, elbows, wrists, hips, knees, and ankles. She was fully able to flex the long, ring and little finger of the left hands, as previously noted. Her grip strength was graded at 3/5 on the left versus 5/5 on the right...
>
> DIAGNOSTIC IMPRESSION:
> 1.    Degenerative disk disease at the cervical spine without evidence of radiculopathy.
> 2.    Status post fracture of the left hand with diminished flexion present in the long, ring, and little fingers of the left hands.
> 3.    History of hypertension - blood pressure today is elevated at 164/113.
> 4.    Status post gastric bypass one year ago.
>
> DISCUSSION: This is a 56-year-old, right-handed, white female who underwent a gastric bypass one year ago. Her current weight is 166½ pounds. She notes that she has lost 100 pounds since her surgery.
>
> The examinee notes a two-year history of hypertension. She states she is compliant on her antihypertensive medications. Her blood pressure today was markedly elevated at 164/113. She has no history of congestive heart failure and no complaints of any angina-type chest pain. She was advised to

follow up with her physician at the first available date for recheck of her blood pressure.

The examinee complains of chronic neck pain that radiates out into her shoulders and down into the right scapular region.  She had no loss of mobility in her cervical spine or in her shoulders.

The examinee sustained fractures to her left hand, treating with casting last year.  She complains of ongoing loss of flexion in her left hand involving the long, ring, and little fingers of the left hand.  She was noted to have loss of grip strength in her left hand, as previously described.

This examinee is able to sit, stand and move about.  Her ability to lift, grasp, and carry with her left hand is impaired.  Her ability to grossly and finely manipulate objects with her left hand is impaired.  She is able to hear, see, speak, and understand normal conversational speech.  Her gait was normal. She was able to ambulate without the use of an assistive device.

(Tr. at 403-04.)

On July 6, 2009, a State Agency medical source completed a Physical Residual Functional Capacity Assessment which stated that Claimant's primary diagnosis was "s/p [status post] left 4th finger proximal phalanx fx [fracture]" and her secondary diagnosis "DJD [degenerative disc disease] spine with pain." (Tr. at 407.)  The examiner, Narendra Parikshak, M.D., opined that Claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk and sit (with normal breaks)about 6 hours in an 8-hour workday, and push and/or pull unlimited. (Tr. at 408.) Dr. Parikshak noted that although Claimant has "left grip weakness; patient is right handed." Id.  Dr. Parikshak opined that Claimant could frequently perform all postural activities, save kneeling and crawling, which could be performed occasionally. (Tr. at 409.) Regarding manipulative limitations, Dr. Parikshak concluded that Claimant was limited in handling and fingering but unlimited in reaching in all directions and feeling. (Tr. at 410.) She concluded that Claimant had no visual or communication limitations. (Tr. at 410-11.)

Claimant had no environment limitations save to avoid concentrated exposure to extreme cold and vibration.  (Tr. at 411.)  Dr. Parikshak concluded that Claimant was "partially credible for left hand weakness."  (Tr. at 412.)  The evaluator noted that while Claimant had a history of left fourth finger fracture with reduced grip strength, her "finger flexion is normal."  (Tr. at 414.)

On September 10, 2009, a State agency medical source provided a Case Analysis. The evaluator, Curtis Withrow, M.D. determined: "I have reviewed all of the evidence in the file and affirm the PRFC of 7/6/09 as written."  (Tr. at 415.)

On February 17, 2010, Claimant was treated at Harts Clinic Valley Health Center for "pain in tail bone x 7 mo [months]. Refill on meds."  (Tr. at 459.)

<u>Psychological Evidence</u>

On August 22, 2006, L. Imasa, M.D., a State agency medical source, provided a consultative examination report for Claimant's previous application for Social Security disability benefits.  (Tr. at 296-99.)  She reported that there were "no reports of inpatient psychiatric hospitalization...She said she likes to do beading and gardening...5'3" tall and weighs 246...She did not appear to be in any acute distress."  (Tr. at 296-97.)  Dr. Imasa diagnosed:

AXIS I:     Dysthymic disorder.
AXIS II:    None.
AXIS III:   Obesity, cellulitis, dry eczema of the lower extremities, history
            of kidney failure and possible hypertension.
AXIS IV:    Unemployment and medical problems.
AXIS V:     GAF = 60.

PROGNOSIS:  Fair with continuing treatment and support services.

(Tr. at 298.)

On September 10, 2006, a State agency medical source completed a Psychiatric Review Technique form.  (Tr. at 301-15.)  The evaluator, James Tripp, Ed.D., found that Claimant's impairment for the affective disorder of dysthymia was not severe.  (Tr. at 302, 305, 314.)  He found Claimant had no limitations regarding activities of daily living and in maintaining social functioning, mild limitation in maintaining concentration, persistence or pace, and no episodes of decompensation.  (Tr. at 312.)

On October 10, 2009, a State agency medical source completed an Adult Mental Status Examination of Claimant.  (Tr. at 416-22.)  The evaluator, Lester Sargent, M.A., licensed psychologist, reported that "pain was the predominant focus of clinical attention during the evaluation…The claimant reported taking medications for depression intermittently for the past 20 years." (Tr. at 417.)  He stated that Claimant reported her hobbies to include: "making jewelry" and that she "is able to perform all basic self-care duties without assistance.  She performs household chores that include cooking, laundry, dishes, and sweeping, and she reported a one-half hour limit before having to take a break due to pain." (Tr. at 420.)  Mr. Sargent diagnosed:

| Axis I 296.32 | Major Depressive Disorder, Recurrent, Moderate, without Psychotic Features |
|---|---|
| 307.89 | Pain Disorder Associated with Both Psychological Factors and a General Medical Condition. |

(Tr. at 419.)

On November 4, 2009, a State agency medical source completed a Psychiatric Review Technique form.  (Tr. at 423-36.)  The evaluator, John Todd, Ph.D., concluded that Claimant had a non-severe impairment for her major depressive and pain disorders. (Tr. at 423, 426, 429.)  He found Claimant had mild limitations regarding activities of daily living, in maintaining social functioning, and concentration, persistence or pace, and no

episodes of decompensation.  (Tr. at 433.) Dr. Todd concluded:

> Clmt [claimant] is mostly credible w/ [with] OP [outpatient] psych TX
> [treatment] / meds from PCP [primary care provider], no HX [history of] of
> IP [inpatient].  MS [mental status] was WNL [within normal limits]/mild def
> w/ mod def in social given minimal weight as clmt interacted well at CE was
> cooperative, no problems noted at FO, talks on phone w/ others, visits w/
> family and husband, goes to store and eats out occasionally and related c/o
> [complaints of] pain as reason she has difficulty w/ physical chores.  There
> is no evidence of severe limitations due to a mental D/O [disorder] and is
> NON-SEVERE.

(Tr. at 435.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's residual functional capacity [RFC] finding is incomplete because it failed to take into consideration Claimant's left hand manipulative limitations; (2) based on the vocational expert's testimony, Claimant's manipulative limitations preclude her past relevant work as a receptionist; and (3) therefore, a finding of "disabled" is directed under the Medical-Vocational Guidelines.   (Pl.'s Br. at 2-5.)

The Commissioner's Response

The Commissioner responds that substantial evidence supports the Commissioner's finding that Claimant could perform her past relevant work because (1) the ALJ considered Claimant's allegations of left hand manipulative limitations and properly relied upon Dr. Marshall's testimony that Claimant's fracture of one finger on her non-dominant, left hand would not pose a significant manipulation problem; (2) the ALJ did not rely on the vocational expert's response to the hypothetical referred to by Claimant because he did not find that Claimant had limitations in handling, fingering, and feeling with her left hand; and (3) the ALJ did not evaluate Claimant at step five of the sequential evaluation process,

where the Medical-Vocational Guidelines are applicable, because he found at step four that

Claimant could perform her past relevant work as a receptionist.  (Def.'s Br. at 9-15.)

The ALJ's Decision

In his 12-page decision, the ALJ considered the entire record and made these

findings regarding Claimant's left hand injury, her residual functional capacity, and her

credibility:

> The claimant testified she suffered a left hand fracture, and as a result has
> limitations including an inability to grasp items.  She stated she cannot close
> her hand in a fist and cannot type.  Further, she stated she suffers from pain
> in her legs and back and cannot sit for very long.  She stated she can only sit
> for approximately fifteen minutes before she has to stand up.
>
> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be expected
> to cause the alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting effects of these symptoms
> are not credible to the extent they are inconsistent with the above residual
> functional capacity assessment.
>
> The objective evidence does not support the extreme limitations alleged and
> reveal the claimant is not fully credible...
>
> With regard to the claimant's hand impairment, the record reveals in
> November of 2008 the claimant sustained a left hand injury after she was
> kicked in the hand by a horse.  Records from Logan Regional Medical Center
> noted obvious swelling and ecchymosis, and placed the hand in a splint.  An
> x-ray showed fracture of the left proximal finger at the base.  The claimant
> underwent a closed reduction by Dr. Robert McCleary who noted a "near
> perfect anatomical reduction" (Exhibit 8F).  The undersigned notes, no
> further treatment was documented in the record with regard to the claimant's
> hand injury.
>
> On June 23, 2009, the claimant was evaluated by Dr. Jules Barefoot, a
> consultative examiner.  Dr. Barefoot noted the claimant's reports that she
> sustained multiple fractures to her left hand, which was treated with casting
> only. She reported due to lack of insurance she removed the cast herself after
> six weeks.  He noted she complained of chronic pain, swelling, limited
> mobility, and diminished grip strength.  He also noted she complained of
> chronic cervical pain which radiates down her shoulder.  Dr. Barefoot

documented the claimant is 63 1/4 inches and weighs 166 ½ pounds.  He further documented normal range of motion in the cervical and lumbar spine, as well as the shoulders, elbows, hips, wrists, knees, and ankles.  He noted the claimant had diminished flexion in the long, right, and little finger of the left hand; however, there was no evidence of edema or muscle atrophy affecting the hands.  Further, he noted the claimant's grip strength was 3/5 on the left versus 5/5 on the right.  He noted her gait was normal and she was able to ambulate without the use of an assistive device.  He documented a diagnosis of degenerative disc disease of the cervical spine without evidence of radiculopathy, status post fracture of the left hand with diminished flexion present in the long, ring, and little fingers, history of hypertension, and status post gastric bypass surgery (Exhibit 9F).

The undersigned notes Dr. Barefoot fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, due to her back and tailbone pain.  In fact, Dr. Barefoot noted the claimant's gait was normal and documented a normal range of motion in both the cervical and lumbar spine.

At the hearing, Dr. Marshall testified [that]...in November of 2008 the claimant was injured after she was kicked by a horse.  He stated she sustained a finger fracture as a result, but the fracture "is not a major issue."  Dr. Marshall noted a consultative examiner documented some weakness in grasping with the left hand, which is likely due to the fracture.  However, Dr. Marshall stated the claimant's finger fracture would cause only minor manipulation problems with the left hand...

The undersigned notes the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling physical symptoms and limitations.  In fact, the claimant reported her activities of daily living included preparing meals, cleaning her house, running errands, doing laundry, watching television, and taking baths/showers.  She noted she takes care of her husband and the home, and takes care of pets.  She reported no problems with self care (Exhibit 10E).

As for the opinion evidence, Dr. Muhammad Mian completed a case analysis dated September 6, 2006 and noted the claimant has no severe physical impairments (Exhibit 4F).  The undersigned gives little weight to the opinion of Dr. Mian because the medical evidence of record documented degenerative disc disease and status post wrist fracture, which supports limiting the claimant to sedentary exertion.

Dr. Narendra Parikshak completed a physical residual functional capacity assessment on July 6, 2009 and noted the claimant can lift/carry up to 50 pounds occasionally, can lift/carry up to twenty-five pounds frequently, and

can sit/stand/walk about 6 hours in an 8 hour day. Dr. Parikshak noted the claimant...is limited with regards to fingering (fine manipulation) and handling (gross manipulation)...(Exhibit 10F). Dr. Curtis Withrow completed a case analysis on September 10, 2009 and affirmed Dr. Parikshak's opinion (Exhibit 11F). The undersigned gives little weight to the opinions of Dr. Parikshak and Dr. Withrow because the medical evidence of record supports limiting the claimant to sedentary exertion. Further, the undersigned gives Drs. Parikshak and Withrow little weight because Dr. Marshall, a medical expert, testified the record as a whole does not support limiting the claimant with regards to fingering and handling.

Dr. Jules Barefoot, a consultative examiner, opined the claimant was noted to have loss of grip strength in her left hand and her ability to lift, grasp, and carry with her left hand is impaired. He also noted the claimant's ability to grossly and finely manipulate objects with her left hand is impaired (Exhibit 9F). The undersigned gives little weight to Dr. Barefoot as the medical evidence in its entirety does not support limiting the claimant's ability to grossly and finely manipulate objects, and because Dr. Marshall, a medical expert, testified the record as a whole does not support limiting the claimant with regards to fingering and handling.

Dr. Marshall stated the claimant's degenerative disc disease would restrict the claimant to sedentary work. He stated the claimant would need a sit/stand option every hour, and she can sit for six hours in an eight hour work day...Dr. Marshall stated the claimant's finger fracture would cause only minor manipulative problems with the left hand. The undersigned gives significant weight to Dr. Marshall's opinion as it is consistent with the record as a whole...

The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

Patricia McFann...testified that based on the claimant's limitations, as proferred by the administrative law judge in the hypothetical at the hearing, the claimant would still be able to perform her past work as a receptionist, DOT number 237.637-038, as it is generally performed.

(Tr. at 37-40.)

Analysis

Residual Functional Capacity [RFC]

Claimant first argues that the Commissioner's decision is not supported by substantial evidence because the ALJ's RFC finding is incomplete because it did not to take into consideration Claimant's left hand manipulative limitations.   (Pl.'s Br. at 2-7.) Specifically, Claimant alleges that the ALJ relied on Dr. Marshall's "unsupported opinion with regard to fingering and handling" and "misquoted the medical expert, as the medical expert never opined that the record did not support limiting the claimant's fingering and handling."  (Pl.'s Br. at 5.)

The Commissioner responds that substantial evidence supports the ALJ properly relied upon Dr. Marshall's testimony that Claimant's fracture of one finger on her non-dominant, left hand would not pose a significant manipulation problem.  (Def.'s Br. at 10-14.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity.   "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996).  Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job.  20 C.F.R. § 404.1545(a) (2010).  "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)."  Id.  "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental

activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2010).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Claimant argues that the ALJ misstated the testimony of Dr. Marshall with regard to fingering and handling because he "never opined that the record did not support limiting the claimant's fingering and handling." (Pl.'s Br. at 5.) Claimant asserts that Dr. Marshall testified

> No problem with the dominant hand, only a minor problem with the left hand" (Transcript pg. 55). Dr. Marshall did not testify regarding the various other opinions in the record except when asked by the attorney if he agreed with 9F (Transcript pg. 55). The ALJ erred in not using the record as a whole to determine the limitations imposed by the Plaintiff's hand injuries.

(Pl.'s Br. at 7.)

The undersigned has thoroughly reviewed the record and concludes that the ALJ did not err in finding that the medical evidence of record as a whole, does not support a finding that Claimant's status post fracture of the left hand ring finger resulted in manipulation limitations to such a degree as to prevent her employment as a receptionist. Claimant's fracture was successfully repaired by surgery according to her surgeon, Dr. Robert W.

McCleary, who described it a "near perfect anatomical reduction." (Tr. at 384.) There is no evidence that Claimant had further treatment for the repaired fracture. Additionally, the assessment of Dr. Barefoot was internally inconsistent, as he indicated both that Claimant had limited flexion in her long, ring, and little left hand fingers, and that she "was fully able to flex" those fingers. (Tr. at 403.) Also, Dr. Barefoot was under the mistaken impressions that Claimant had "multiple fractures to the left hand" (the evidence of record shows Claimant had only one fracture, to the left ring finger), treated with casting only (she had surgery). (Tr. at 381-86, 402.) The ALJ correctly concluded that Dr. Barefoot's opinion was not reliable. (Tr. at 38.)

As to the opinions of Drs. Parikshak and Withrow, they found Claimant to be only "partially credible" regarding her allegations of weakness in her left hand. (Tr. at 410, 412, 415.) As the ALJ pointed out, both these physicians found Claimant was capable of medium duty work, and their opinions contradicted the record as a whole with regards to fingering and handling. (Tr. at 39.)

Additionally, on May 23, 2009, Claimant completed a Function Report wherein she stated that she was capable of a wide range of daily activities including preparing meals, cleaning house, vacuuming, dusting, doing laundry, running errands, driving, attending to personal care, feeding and brushing a pet dog. (Tr. at 230-32.) She stated that her ability to do dishes and wash the dog were limited due "back pain" and made no mention of hand pain in limiting her ability to do these jobs. (Tr. at 231-32.) Later in the report Claimant writes that she has a "crippled hand...hard to pick up change with left hand...(unable to do) beading since broke left hand." (Tr. at 233-34.) However, on October 10, 2009 Claimant told Mr. Sargent, a psychologist, that her hobbies included: "making jewelry." (Tr. at 420.)

On June 23, 2010, Claimant testified: "I don't do beading anymore because I can't function with that hand." (Tr. at 61.)  Although Claimant is inconsistent on her abilities to make jewelry, she clearly states she is able to do a variety of daily activities requiring the use of both hands.

The ALJ did not misstate the testimony of Dr. Marshall, as Dr. Marshall testified that Claimant "had a fracture of one finger, so I don't think that would be a major problem...this would not be any significant manipulation problem for her, no. No problem with the dominant hand, only a minor problem with the left hand." (Tr. at 55.)  It is not necessary for Dr. Marshall to have stated the words "fingering and handling" as asserted by Claimant. (Pl.'s Br. at 5.)  Dr. Marshall's statement "this would not be any significant manipulation problem for her" is sufficient for the ALJ to interpret Claimant's abilities regarding fingering and handling.

Claimant asserts that "Dr. Marshall did not testify regarding the various other opinions in the record except when asked by the attorney if he agreed with 9F (Transcript pg. 55)." (Pl.'s Br. at 7.)  Exhibit 9F contains the consultative examination report of Dr. Barefoot.  (Tr. at 401-06.)  Dr. Marshall testified that he disagreed with Dr. Barefoot's assessment that Claimant had a limited ability to finely manipulate.  (Tr. at 55.) At that point in the testimony, Claimant is questioned and appears to become confused regarding which is her dominant hand.  Id.  After Claimant testifies that she is "right-handed," Dr. Marshall concludes: "No problem with the dominant hand, only a minor problem with the left hand." Id.

Finally, it is noted that Claimant fractured her finger in November 2008, more than two years after her initial application for Social Security benefits.  Therefore, Claimant's

fractured finger was not a factor in why she stopped working or why she believed she was disabled when she applied for benefits.

With respect to Claimant's assertion that the ALJ erred in assessing her manipulative limitations in determining the RFC, the court proposes that the presiding District Judge find that the ALJ fully described the medical evidence, the activity that the claimant can perform in a work setting, and gave appropriate consideration to all of her impairments in keeping with the applicable regulations, case law, and social security ruling ("SSR") and that his findings are supported by substantial evidence.

Vocational Expert [VE] and Hypotheticals

Claimant next argues that the "VE testified that at least 50 percent of the receptionist jobs as normally performed in the national economy would require data entry; thus based on the DOT, receptionist would be eliminated." (Pl.'s Br. at 8.)

The Commissioner points out in response that the ALJ did not rely on the vocational expert's response to the hypothetical referred to by Claimant, which was posed by Claimant's representative, because he did not find that Claimant had limitations in handling, fingering, and feeling with her left hand. (Def.'s Br. at 14-15; Tr. at 59-60.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must

fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).   Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.   Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the subject claim, the ALJ determined that the medical evidence did not support a finding that Claimant had handling, fingering, and feeling limitations in the use of her left hand.  (Tr. at 40.)  In response to the ALJ's hypothetical, the VE testified that Claimant "would be able to perform her work as a receptionist in the one job that she held the longest."  (Tr. at 57.)

Medical-Vocational Guidelines

Claimant next asserts that she would be "'disabled' according to the Medical Vocational guidelines" had the ALJ  evaluated Claimant at step five of the sequential evaluation process, where the Medical-Vocational Guidelines are applicable.  At step four, the ALJ found that Claimant could perform her past relevant work as a receptionist.  If a claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled.  Only if the claimant is unable to do any past relevant work or does not have any past relevant work, does the analysis proceed to the fifth and last step in the sequential evaluation process.  20 C.F.R. §§ 404.1520(f) and 404.1520(g) (2010).

Credibility

Implicit in Claimant's argument is the assertion that the ALJ failed to properly evaluate Claimant's credibility regarding her left hand weakness.  Social Security Ruling 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§

404.1529 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements.  The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record.  This includes, but is not limited to:

> - The medical signs and laboratory findings;

> - Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

> - Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning  the individual's symptoms and how the symptoms affect the individual's ability to work.

With respect to Claimant's assertion that the ALJ wrongfully discredited Claimant's subjective complaints of pain, the court proposes that the presiding District Judge find that the ALJ properly weighed Claimant's subjective complaints of pain in keeping with the applicable regulations, case law, and social security ruling ("SSR") and that his findings are supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

In his decision, the ALJ determined that Claimant had medically determinable

impairments that could cause her alleged symptoms. (Tr. at 32-35.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms.  Id.  The ALJ explained his reasons for finding Claimant not entirely credible, including the objective findings, the nature of Claimant's treatment, the lack of evidence of side effects which would impact Claimant's ability to perform her past relevant work, and her broad range of self-reported daily activities.  Id.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v.

Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

  May 31, 2012  
     Date

Mary E. Stanley
United States Magistrate Judge